**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| MONKEYMEDIA, INC., | ) | |
| | ) | Civil Action No. 1:10-CV-00319 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| APPLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT APPLE INC.'S ANSWER AND COUNTERCLAIMS TO PLAINTIFF'S**
**THIRD AMENDED COMPLAINT**

Defendant Apple Inc. ("Apple") respectfully submits its Answer and Counterclaims to the Third Amended Complaint ("Complaint") filed by MONKEYmedia, Inc. ("MONKEYmedia") on July 19, 2010, and states as follows:

## I.    THE PARTIES

1.      In answer to Paragraph 1 of the Complaint, Apple lacks sufficient information to form a belief regarding the truth of the allegations contained therein and therefore denies the allegations.

2.      In answer to Paragraph 2 of the Complaint, Apple admits that it is a California corporation with its principal place of business in Cupertino, California.  Apple further admits that it maintains an agent for service of process at CT Corporation System, 818 West Seventh Street, Los Angeles, CA 90017.

## II.    JURISDICTION AND VENUE

3.      In answer to Paragraph 3 of the Complaint, Apple admits that the Complaint purports to state a claim for patent infringement under the patent laws of the United States, Title 35 of the United States Code.  Apple further admits that this Court has subject matter jurisdiction

over such claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Apple does not challenge that this Court has personal jurisdiction over it and admits that it conducts business in this judicial District.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 3.

4.      In answer to Paragraph 4 of the Complaint, Apple concedes that venue is proper in this District.  In further response to Paragraph 4 of the Complaint, Apple denies that it has committed "acts of infringement" in this District, while admitting that it has conducted business in this District.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 4.

## III.    MONKEYmedia's PATENTS

5.      In answer to Paragraph 5 of the Complaint, Apple lacks sufficient information to form a belief regarding the truth of the allegations contained therein and therefore denies the allegations.

### A.      The '938 Patent

6.      In answer to Paragraph 6 of the Complaint, Apple admits that the face of U.S. Patent No. 6,177,938 (the "'938 Patent") indicates that it is a continuation of Application No. 07/990,339 filed on December 14, 1992 and has an issuance date as January 23, 2001. Except as expressly admitted, Apple lacks sufficient information to form a belief regarding the truth of the allegations contained in the remaining allegations of Paragraph 6 and therefore denies the allegations.

### B.      The '052 Patent

7.      In answer to Paragraph 7 of the Complaint, Apple admits that the face of U.S. Patent No. 6,219,052 (the "'052 Patent") indicates that it is a continuation of Application No. 07/990,339 filed on December 14, 1992 and has an issuance date as April 17, 2001.  Except as expressly admitted, Apple lacks sufficient information to form a belief regarding the truth of

the allegations contained in the remaining allegations of Paragraph 7 and therefore denies the allegations.

### C.  The '730 Patent

8.     In answer to Paragraph 8 of the Complaint, Apple admits that the face of U.S. Patent No. 6,335,730 (the "'730 Patent") indicates that it is a continuation of Application No. 07/990,339 filed on December 14, 1992 and has an issuance date as January 1, 2002.  Except as expressly admitted, Apple lacks sufficient information to form a belief regarding the truth of the allegations contained in the remaining allegations of Paragraph 8 and therefore denies the allegations.

### D.  The '158 Patent

9.     In answer to Paragraph 9 of the Complaint, Apple lacks sufficient information to form a belief regarding the truth of the allegations contained therein and therefore denies the allegations.

10.    In answer to Paragraph 10 of the Complaint, Apple admits that the "DVD Player" or "Front Row" application can play DVD discs using the optical disc drive of the computer. Except as expressly admitted, Apple denies the remaining allegations of Paragraph 10.

11.    In answer to Paragraph 11 of the Complaint, Apple admits that the iAd Platform, which is built into the iOS 4 operating system, is available on certain versions of the iPhone and iPod touch devices.  Apple further admits that the iAd Platform allows an advertisement ("ad") banner to be inserted into an application ("app").  In further response to Paragraph 11 of the Complaint, Apple admits that clicking on an ad within the app launches the ad; when the ad is closed, the app. resumes.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 11.

12.    In answer to Paragraph 12 of the Complaint, Apple admits that the face of U.S. Patent No. 6,393,158 (the "'158 Patent") indicates that it was filed on April 23, 1999 and has an

issuance date as May 21, 2002.  Except as expressly admitted, Apple lacks sufficient information to form a belief regarding the truth of the allegations contained in the remaining allegations of Paragraph 12 and therefore denies the allegations.

### E.    The '218 Patent

13.    In answer to Paragraph 13 of the Complaint, Apple lacks sufficient information to form a belief regarding the truth of the allegations contained therein and therefore denies the allegations.

14.    In answer to Paragraph 14 of the Complaint, Apple admits that the "DVD Player" or "Front Row" application can play DVD discs using the optical disc drive of the computer. Except as expressly admitted, Apple denies the remaining allegations of Paragraph 14.

15.    In answer to Paragraph 15 of the Complaint, Apple admits that the iAd Platform, which is built into the iOS 4 operating system, is available to certain versions of the iPhone and iPod touch devices.  Apple further admits that the iAd Platform allows an ad banner to be inserted into an app.  In further response to Paragraph 15 of the Complaint, Apple admits that clicking on an ad within the app launches the ad; when the ad is closed, the app. resumes. Except as expressly admitted, Apple denies the remaining allegations of Paragraph 15.

16.    In answer to Paragraph 16 of the Complaint, Apple admits that the face of U.S. Patent No. 7,467,218 (the "'218 Patent") indicates that it is a continuation of Application No. 09/298,336 filed on April 23, 1999 and has an issuance date as December 16, 2008.  Except as expressly admitted, Apple lacks sufficient information to form a belief regarding the truth of the allegations contained in the remaining allegations of Paragraph 16 and therefore denies the allegations.

### IV.    ACCUSED PRODUCTS

17.    In answer to Paragraph 17 of the Complaint, Apple admits that it designs and manufactures computers, mobile devices, and software, including the Mac OS X "Snow

Leopard" operating system.  Apple further admits that the "Summary Service" feature, distributed as part of its Mac OS X "Snow Leopard" operating system, is found under the "Services" menu and can display summaries in either paragraph or sentence mode.  Apple further admits that the "Summary Service" contains a "Summary Size" slider that allows the user to adjust how long he or she wants a summary to be.  In further response to Paragraph 17 of the Complaint, Apple admits that the following text:  "You wouldn't expect a computer to be able to analyze some text and provide a good summary but Summary Service is surprisingly good.  Try it!" appears at http://www.apple.com/pro/tips/summarize.html.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 17.

18.    In answer to Paragraph 18 of the Complaint, Apple admits that it manufactures, distributes, and sells computers containing the "Preview" application, which is distributed as part of its Mac OS X "Snow Leopard" operating system.  Apple further admits that the following text: "offers a full-featured PDF viewing experience complete with searching and annotation capabilities" and "Spotlight technology makes it easy to find what you're looking for.  Type in a word or phrase, and Preview instantly returns the results in an easy-to-use list" appears at http://www.apple.com/macosx/what-is-macosx/graphics-media.html and http://www.apple.com/macosx/what-is-macosx/apps-and-utilities.html, respectively.  Apple further admits that Preview can display only thumbnails of pages containing the search term(s).  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 18.

19.    In answer to Paragraph 19 of the Complaint, Apple admits that it made and distributed a web browser program called Safari 4 for computers running Mac OS X or certain Microsoft operating systems.  Apple further admits that Safari 2 was released on or around 2005 and that some versions of Safari contain an RSS reader, which assembles articles from websites for a user to read.  Apple further admits that the RSS reader contains an "Article Length" slider, which allows a user to adjust the length of RSS article summaries in order to display the right amount of detail.  In further response to Paragraph 19 of the Complaint, Apple admits that the following text:  "world's fastest and most innovative web browser" and "more than 11 million

copies of Safari® 4 have been downloaded in the first three days of its release, including more than six million downloads of Safari for Windows" appears at http://www.apple.com/pr/library/2009/02/24safari.html and http://www.apple.com/pr/library/2009/06/12safari.html, respectively.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 19.

20.     In answer to Paragraph 20 of the Complaint, Apple admits that it manufactures and sells Macintosh computers containing the "DVD Player" application, which is distributed as part of its Mac OS X "Snow Leopard" operating system.  Apple further admits that DVD Player can play DVDs in the computer's optical disc drive, including DVDs that contain different versions of a movie.  In further response to Paragraph 20 of the Complaint, Apple admits that the following text:  "Enjoy a front-row seat for everything from the latest action thriller to your latest family vacation—with dramatic sound and high-definition video—all from DVD Player on your Mac" appears at http://www.apple.com/macosx/what-is-macosx/apps-and-utilities.html.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 20.

21.     In answer to Paragraph 21 of the Complaint, Apple admits that on or around October 2005, it made, distributed, and sold Macintosh computers containing the "Front Row" application.  Apple further admits that "Front Row" can be used as an alternative to the "DVD Player" application to play DVDs in the computer's optical disc drive.  In further response to Paragraph 21 of the Complaint, Apple admits that the following text:  "Front Row transforms an evening at home into a blockbuster Hollywood premiere" appears at http://www.apple.com/macosx/what-is-macosx/apps-and-utilities.html.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 21.

22.     In answer to Paragraph 22 of the Complaint, Apple admits that iAd was released in or around July 2010.  Apple further admits that iAd Platform, which is built into the iOS 4 operating system, is available to certain versions of the iPhone and iPod touch devices.  In further response to Paragraph 22 of the Complaint, Apple admits that the iOS 4 operating system

for the iPad is scheduled to be released in the future.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 22.

23.    In answer to Paragraph 23 of the Complaint, Apple denies the allegations contained in Paragraph 23.

24.    In answer to Paragraph 24 of the Complaint, Apple admits that the following text: "Tap the ad and the application pauses.  Close the ad and the application resumes.  Your ad will captivate your audience from the moment it launches to the moment it closes.  Because the iAd platform is built into iOS 4, ads load seamlessly" appears at http://advertising.apple.com.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 24.

## V.    ALLEGATIONS OF WILLFULNESS

25.     In answer to Paragraph 25 of the Complaint, Apple admits that MONKEYmedia contacted Apple regarding MONKEYmedia's patent portfolio on or around March 2004 and, at MONKEYmedia's suggestion, Apple reviewed one or more patents contained on MONKEYmedia's website (http://www.monkey.com) at or around that time.  Apple further admits that counsel for MONKEYmedia sent Apple a letter containing a purported listing of MONKEYmedia's "seamless contraction family" and "seamless expansion family" of patents, which listed the '938, '052, '730, '158 and '218 Patents (collectively, "patents-in-suit"), on or around August 25, 2009.  Except as expressly admitted, Apple denies the remaining allegations of Paragraph 25.

## VI.    ALLEGATIONS OF PATENT INFRINGEMENT

### A.    The '938 Patent

26.    Apple incorporates by reference its responses to Paragraphs 1-25 of the Complaint.

27.    In answer to Paragraph 27 of the Complaint, Apple denies the allegations contained in Paragraph 27.

28.     In answer to Paragraph 28 of the Complaint, Apple denies the allegations contained in Paragraph 28.

29.     In answer to Paragraph 29 of the Complaint, Apple denies the allegations contained in Paragraph 29.

30.     In answer to Paragraph 30 of the Complaint, Apple denies the allegations contained in Paragraph 30.

**B.     The '052 Patent**

31.     Apple incorporates by reference its responses to Paragraphs 1-25 of the Complaint.

32.     In answer to Paragraph 32 of the Complaint, Apple denies the allegations contained in Paragraph 32.

33.     In answer to Paragraph 33 of the Complaint, Apple denies the allegations contained in Paragraph 33.

34.     In answer to Paragraph 34 of the Complaint, Apple denies the allegations contained in Paragraph 34.

35.     In answer to Paragraph 35 of the Complaint, Apple denies the allegations contained in Paragraph 35.

**C.     The '730 Patent**

36.     Apple incorporates by reference its responses to Paragraphs 1-25 of the Complaint.

37.     In answer to Paragraph 37 of the Complaint, Apple denies the allegations contained in Paragraph 37.

38.     In answer to Paragraph 38 of the Complaint, Apple denies the allegations contained in Paragraph 38.

39.     In answer to Paragraph 39 of the Complaint, Apple denies the allegations contained in Paragraph 39.

40.     In answer to Paragraph 40 of the Complaint, Apple denies the allegations contained in Paragraph 40.

41.     In answer to Paragraph 41 of the Complaint, Apple denies the allegations contained in Paragraph 41.

**D.     The '158 Patent**

42.     Apple incorporates by reference its responses to Paragraphs 1-25 of the Complaint.

43.     In answer to Paragraph 43 of the Complaint, Apple denies the allegations contained in Paragraph 43.

44.     In answer to Paragraph 44 of the Complaint, Apple denies the allegations contained in Paragraph 44.

45.     In answer to Paragraph 45 of the Complaint, Apple denies the allegations contained in Paragraph 45.

46.     In answer to Paragraph 46 of the Complaint, Apple denies the allegations contained in Paragraph 46.

47.     In answer to Paragraph 47 of the Complaint, Apple denies the allegations contained in Paragraph 47.

**E.     The '218 Patent**

48.     Apple incorporates by reference its responses to Paragraphs 1-25 of the Complaint.

49.     In answer to Paragraph 49 of the Complaint, Apple denies the allegations contained in Paragraph 49.

50.     In answer to Paragraph 50 of the Complaint, Apple denies the allegations contained in Paragraph 50.

51.     In answer to Paragraph 51 of the Complaint, Apple denies the allegations contained in Paragraph 51.

52.     In answer to Paragraph 52 of the Complaint, Apple denies the allegations contained in Paragraph 52.

53.     In answer to Paragraph 53 of the Complaint, Apple denies the allegations contained in Paragraph 53.

54.     In answer to Paragraph 54 of the Complaint, Apple denies the allegations contained in Paragraph 54.

55.     In answer to Paragraph 55 of the Complaint, Apple denies the allegations contained in Paragraph 55.

**VII.    JURY DEMAND**

56.     An answer to MONKEYmedia's jury demand is not necessary from Apple.

**VIII.   MONKEYMEDIA'S PRAYER FOR RELIEF**

57.     Apple denies that MONKEYmedia is entitled to any relief in this action and asks the Court to deny any and all of the relief requested by MONKEYmedia in its Complaint.

## IX.    ADDITIONAL DEFENSES

Apple hereby asserts the following separate additional defenses to the claims and allegations contained in Plaintiff's Complaint, without admitting or acknowledging that Apple bears the burden of proof as to any of them.  Apple reserves the right to seek leave to amend its Answer and Counterclaims to plead additional defenses and counterclaims and/or to supplement its existing defenses if information developed through discovery, trial, or otherwise merits such additional defenses, counterclaims, or supplementation.

### A.    FIRST ADDITIONAL DEFENSE
### (Non-Infringement)

1.    Apple does not infringe and has not infringed any valid and enforceable claim of the '938, '052, '730, '158, and '218 Patents (collectively, "patents-in-suit"), whether directly or indirectly, by inducement or contributory infringement, literally, or under the doctrine of equivalents.

### B.    SECOND ADDITIONAL DEFENSE
### (Invalidity)

2.    One or more claims of the patents-in-suit is invalid for failure to comply with one or more requirements for patentability under the patent laws, including but not limited to 35 U.S.C. §§ 102, 103, and/or 112.

### C.    THIRD ADDITIONAL DEFENSE
### (Estoppel)

3.    MONKEYmedia's requested relief is barred, in whole or in part, by the doctrine of estoppel, including, but not limited to, the doctrine of prosecution history estoppel arising from the patentee's actions, representations, or conduct before the United States Patent and Trademark Office during prosecution of the patents-in-suit.

### D.   FOURTH ADDITIONAL DEFENSE
(Prosecution Laches)

4.     MONKEYmedia's claims are barred, in whole or in part, because the equitable

doctrine of prosecution laches renders the patents-in-suit unenforceable.

### E.   FIFTH ADDITIONAL DEFENSE
(Statute of Limitations)

5.     To the extent MONKEYmedia seeks recovery for any alleged infringement

committed more than six years prior to the filing of the Complaint, such recovery is barred by

35 U.S.C. § 286.

### F.   SIXTH ADDITIONAL DEFENSE
(Marking)

6.     Upon information and belief, MONKEYmedia's claims for relief and prayer for

damages are limited under 35 U.S.C. § 287.

### G.   SEVENTH ADDITIONAL DEFENSE
(Limitation on Recovery of Costs)

7.     MONKEYmedia is precluded from seeking recovery of costs by 35 U.S.C. § 288.

### H.   EIGHTH ADDITIONAL DEFENSE
(Adequate Remedy at Law)

8.     MONKEYmedia is not entitled to injunctive relief as it has, at a minimum, no

irreparable injury and an adequate remedy at law for Apple's alleged infringement.

### I.   NINTH ADDITIONAL DEFENSE
(Equitable Defenses)

9.     MONKEYmedia's claims are barred, in whole or in part, under the equitable

doctrines of laches, equitable estoppel, and/or acquiescence.

**J.      TENTH ADDITIONAL DEFENSE**
**(Inequitable Conduct)**

10.      For at least the reasons set forth herein below in Apple's unenforceability Counterclaims, Paragraphs 38 through 81 of which are hereby incorporated into the statement of this additional defense, the '158 and '218 Patents are unenforceable due to inequitable conduct committed during the prosecution of these and related applications that led to the issuance of these patents.

**X.      COUNTERCLAIMS**

Defendant-Counterclaimant Apple Inc. ("Apple") brings the following counterclaims against Plaintiff-Counterdefendant MONKEYmedia, Inc. ("Counterdefendant"):

**THE PARTIES**

1.      Defendant-Counterclaimant Apple is a corporation organized and existing under the laws of the State of California with its principal place of business in Cupertino, California. Apple conducts business in this judicial District.

2.      On information and belief, and as alleged in Paragraph 1 of its Complaint in this action, MONKEYmedia, which elected to file the present lawsuit against Apple in this District, "is a Texas corporation with its principal place of business in Austin, Texas."

**JURISDICTION AND VENUE**

3.      MONKEYmedia is subject to the personal jurisdiction of this Court because, including without limitation, MONKEYmedia has availed itself of the protection of this judicial District by filing the present lawsuit in this District.

4.      Although venue is more properly established in a judicial district that would better serve the convenience of the parties and witnesses and the interests of justice, the minimum requisites for venue under 28 U.S.C. § 1391 exist in this judicial District.

5.      In Paragraph 6 of its Complaint in this lawsuit, MONKEYmedia has alleged that it owns U.S. Patent No. 6,177,938 ("the '938 Patent").

6.      In Paragraph 7 of its Complaint in this lawsuit, MONKEYmedia has alleged that it owns U.S. Patent No. 6,219,052 ("the '052 Patent").

7.      In Paragraph 8 of its Complaint in this lawsuit, MONKEYmedia has alleged that it owns U.S. Patent No. 6,335,730 ("the '730 Patent").

8.      In Paragraph 9 of its Complaint in this lawsuit, MONKEYmedia has alleged that it owns U.S. Patent No. 6,393,158 ("the '158 Patent").

9.      In Paragraph 13 of its Complaint in this lawsuit, MONKEYmedia has alleged that it owns U.S. Patent No. 7,467,218 ("the '218 Patent").

10.      In its Complaint in this lawsuit, MONKEYmedia has further alleged that Defendant-Counterclaimant Apple infringes the '938, '052, '730, '158, and '218 Patents, and that the '938, '052, '730, '158, and '218 Patents are valid and enforceable.  Apple denies these allegations.

11.      An actual controversy exists between Counterdefendant MONKEYmedia and Defendant-Counterclaimant Apple regarding, *inter alia*, the validity, enforceability, and infringement of the '938, '052, '730, '158 and '218 Patents.

12.      This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201(a), and 2202.

## FIRST COUNTERCLAIM
### (Declaration of Non-Infringement of the '938 Patent)

13.      Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

14.     Apple does not infringe and has not infringed, directly or indirectly, willfully or otherwise, any valid and enforceable claim of the '938 Patent, either literally or under the doctrine of equivalents.

15.     MONKEYmedia is precluded under the doctrine of prosecution history estoppel from asserting or construing, whether literally or by the doctrine of equivalents, any claim of the '938 Patent in a way that would read upon any product made, used, sold, offered for sale, or imported by Apple.

### SECOND COUNTERCLAIM
#### (Declaration of Non-Infringement of the '052 Patent)

16.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

17.     Apple does not infringe and has not infringed, directly or indirectly, willfully or otherwise, any valid and enforceable claim of the '052 Patent, either literally or under the doctrine of equivalents.

18.     MONKEYmedia is precluded under the doctrine of prosecution history estoppel from asserting or construing, whether literally or by the doctrine of equivalents, any claim of the '052 Patent in a way that would read upon any product made, used, sold, offered for sale, or imported by Apple.

### THIRD COUNTERCLAIM
#### (Declaration of Non-Infringement of the '730 Patent)

19.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

20.     Apple does not infringe and has not infringed, directly or indirectly, willfully or otherwise, any valid and enforceable claim of the '730 Patent, either literally or under the doctrine of equivalents.

21.     MONKEYmedia is precluded under the doctrine of prosecution history estoppel from asserting or construing, whether literally or by the doctrine of equivalents, any claim of the '730 Patent in a way that would read upon any product made, used, sold, offered for sale, or imported by Apple.

**FORTH COUNTERCLAIM**
**(Declaration of Non-Infringement of the '158 Patent)**

22.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

23.     Apple does not infringe and has not infringed, directly or indirectly, willfully or otherwise, any valid and enforceable claim of the '158 Patent, either literally or under the doctrine of equivalents.

24.     MONKEYmedia is precluded under the doctrine of prosecution history estoppel from asserting or construing, whether literally or by the doctrine of equivalents, any claim of the '158 Patent in a way that would read upon any product made, used, sold, offered for sale, or imported by Apple.

**FIFTH COUNTERCLAIM**
**(Declaration of Non-Infringement of the '218 Patent)**

25.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

26.     Apple does not infringe and has not infringed, directly or indirectly, willfully or otherwise, any valid and enforceable claim of the '218 Patent, either literally or under the doctrine of equivalents.

27.     MONKEYmedia is precluded under the doctrine of prosecution history estoppel from asserting or construing, whether literally or by the doctrine of equivalents, any claim of the '218 Patent in a way that would read upon any product made, used, sold, offered for sale, or imported by Apple.

## SIXTH COUNTERCLAIM
### (Declaration of Invalidity of the '938 Patent)

28.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

29.     The asserted claims of the '938 Patent are invalid for failure to comply with one or more requirements for patentability under the patent laws, including 35 U.S.C. §§ 102, 103, and/or 112.

## SEVENTH COUNTERCLAIM
### (Declaration of Invalidity of the '052 Patent)

30.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

31.     The asserted claims of the '052 Patent are invalid for failure to comply with one or more requirements for patentability under the patent laws, including 35 U.S.C. §§ 102, 103, and/or 112.

## EIGHTH COUNTERCLAIM
### (Declaration of Invalidity of the '730 Patent)

32.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

33.     The asserted claims of the '730 Patent are invalid for failure to comply with one or more requirements for patentability under the patent laws, including 35 U.S.C. §§ 102, 103, and/or 112.

## NINTH COUNTERCLAIM
### (Declaration of Invalidity of the '158 Patent)

34.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

35.     The asserted claims of the '158 Patent are invalid for failure to comply with one or more requirements for patentability under the patent laws, including 35 U.S.C. §§ 102, 103, and/or 112.

## TENTH COUNTERCLAIM
### (Declaration of Invalidity of the '218 Patent)

36.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

37.     The asserted claims of the '218 Patent are invalid for failure to comply with one or more requirements for patentability under the patent laws, including 35 U.S.C. §§ 102, 103, and/or 112.

## ELEVENTH COUNTERCLAIM
### (Declaration of Unenforceability of the '158 Patent)

38.    Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 of these Counterclaims as if fully rewritten here.

39.    The following instances of inequitable conduct during the prosecution of Application No. 09/298,336 ("the '336 Application") are only examples, are not intended to be exhaustive, and should not be interpreted to limit Apple's inequitable conduct defense and counterclaims in any way.

40.    According to the face of the patent, the '158 Patent issued to named inventors Eric Justin Gould and Rachel M. Strickland ("Named Inventors") from the '336 Application filed on April 23, 1999.

41.    On the same day as the '336 Application was filed, the Named Inventors, through their patent attorneys, filed two other related applications: Application Nos. 09/298,681 ("the '681 Application") and 09/298,586 ("the '586 Application") (the '336, '681 and '586 Applications being collectively referred to herein as the "parallel applications").

42.    The '681 and '586 Applications contained specifications substantially identical to the '336 Application (ultimately the '158 Patent) and similar claims.  The '681 and '586 Applications are hence material and relevant to the prosecution of all the claims (and limitations) of the '336 Application.

43.    The parallel '336, '681 and '586 Applications were filed by the attorneys/agents of Hickman Stephens & Coleman, LLP, which included Kevin J. Zilka, a patent agent at the time, and Dominic M. Kotab, a patent attorney.  Mr. Zilka became registered as a patent attorney on August 2, 2005.

44.     The parallel '336, '681 and '586 Applications were each examined by different Examiners.  Specifically, the '336 Application was examined by Examiner Meky, the '681 Application was examined by Examiner Tran, and the '586 Application was examined by Examiner Singh.

45.     On or around August 6, 2001, the United States Patent and Trademark Office (PTO) accepted a Power of Attorney, by Named Inventor and CEO of assignee MONKEYmedia, Eric Justin Gould Bear, to Silicon Valley IP Group, LLC with respect to the parallel '336, '681 and '586 Applications.  Thus, on information and belief, in addition to being associated with the firm that filed the parallel Applications, Kevin J. Zilka and Dominic M. Kotab (collectively, "the prosecuting attorneys") prosecuted the parallel '336, '681 and '586 Applications with Silicon Valley IP Group, LLC from at least that point forward.

46.     As early as August 6, 2001, the prosecuting attorneys filed many of the same papers at the same time across the three parallel applications.  On the other hand, the parallel '336, '681 and '586 Applications were never cross-referenced to the PTO.  Specifically, the existence of the '681 and '586 Applications was not brought to the attention of the Examiner of the '336 Application (Examiner Meky).  Similarly, the existence of the '336 and '681 Applications was not brought to the attention of the Examiner of the '586 Application (Examiner Singh) and the existence of the '336 and '586 Applications was not brought to the attention of the Examiner of the '681 Application (Examiner Tran).

47.     Because the parallel '336, '681 and '586 Applications were not cross-referenced, none of the Examiners was able to consider potential issues of double patenting between the three parallel applications.  Specifically, because the '681 and '586 Applications were never

brought to Examiner Meky's attention, he did not consider double patenting issues when he allowed the original claims of the '336 Application to issue on May 21, 2002.

48.     The prosecution of the parallel applications overlapped in time with the prosecution of the '336 Application.  Nevertheless, even though the prosecuting attorneys' firm filed all three parallel Applications and as early as August 6, 2001 the prosecuting attorneys filed the same papers across the three parallel applications, they intentionally concealed from the '336 Application Examiner the existence of the two parallel '681 and '586 Applications.

49.     The prosecuting attorneys were aware of and subject to the duty of candor and good faith under Title 37, CFR § 1.56.  Their failure to cross-reference the parallel '681 and '586 Applications was done with an intent to deceive and constitutes inequitable conduct, which renders all the claims in the '158 Patent unenforceable.

## TWELFTH COUNTERCLAIM
### (Declaration of Unenforceability of the '218 Patent)

50.     Defendant-Counterclaimant Apple hereby incorporates and realleges Paragraphs 1-12 and 38-49 of these Counterclaims as if fully rewritten here.

51.     The following instances of inequitable conduct during the prosecution of Application Nos. 10/107,945 ("the '945 Application") and 10/603,581 ("the '581 Application") are only examples, are not intended to be exhaustive, and should not be interpreted to limit Apple's inequitable conduct defense and counterclaims in any way.

52.     The '218 Patent is unenforceable for at least two independent reasons.

53.     First, shortly before the issuance of the '158 Patent on March 26, 2002, the Named Inventors, through the prosecuting attorneys, filed a continuing application (the '945 Application), which ultimately issued as U.S. Patent No. 6,615,270 ("the '270 Patent").

54.     Although the '270 Patent is not asserted against Apple, its enforceability is at issue in this lawsuit because inequitable conduct during the prosecution of the earlier '270 Patent renders the later '218 Patent, which is in suit, unenforceable under the doctrine of infectious unenforceability.

55.     Specifically, shortly before the issuance of the '270 Patent, the Named Inventors through the prosecuting attorneys, filed on June 24, 2003 a continuing application (the '581 Application), which ultimately issued as the '218 Patent.  The '218 Patent is unenforceable because of inequitable conduct that occurred during the prosecution of the '945 Application, the parent of the '581 Application, under the doctrine of infectious unenforceability

56.     The '945 Application was filed with claims 1-19, which were identical to claims 1-19 of the parent '336 Application (which later issued as the '158 Patent) as filed.  In addition, as discussed above, the specification of the '336 Application, and hence the continuing '945 Application, is substantially identical to the two specifications of the parallel '681 and '586 Applications. The claims of the '945 Application are also similar to that of the parallel '681 and '586 Applications.  The '681 and '586 Applications are hence material and relevant to the prosecution of all the claims (and limitations) of the '945 Application.

57.     The '270 Patent itself is unenforceable for at least two reasons.  First, the prosecuting attorneys intentionally failed to cross-reference the parallel applications (the '586 and '681 Applications) including associated Office Actions and Amendments.  Second, the prosecuting attorneys intentionally failed to cite material prior art that was identified during prosecution of the parallel '681 and '586 Applications, which were co-pending with the '945 Application.

58.     As stated above, as early as August 6, 2001, the prosecuting attorneys filed many of the same papers at the same time across the parallel '336, '681 and '586 Applications.  The '945 Application is the continuing child application of the '336 Application.  The specification of the '945 Application is substantially identical to the related parallel '586 Application, and the claims of the '945 Application are similar to that of the parallel '586 Application.  However, the '945, '681 and '586 Applications were never cross-referenced to the PTO during the prosecution of each of them.  Specifically, the existence of the '681 and '586 Applications were not brought to the attention of the Examiner of the '945 Application (Examiner Meky) and therefore Examiner Meky did not consider double patenting issues with regard to all the issued claims (and limitations) of the '270 Patent.  Similarly, the existence of the '945 and '681 Applications were not brought to the attention of the Examiner of the '586 Application (Examiner Singh) and the existence of the '945 and '586 Applications were not brought to the attention of the Examiner of the '681 Application (Examiner Tran).

59.     The prosecuting attorneys also did not disclose the prior art references cited in the parallel '586 Application and the '945 Application.  In addition, the prosecuting attorneys also did not disclose any of the Office Actions and Amendments (from the prosecution files in the parallel '586 Application) to the Examiner of the '945 Application.

60.      On or around May 8, 2002, the Examiner of the '586 Application (Examiner Singh) issued an Office Action rejecting the claims over the prior art Hunt (U.S. Patent No. 6,128,712, "Hunt") and Savchenko (U.S. Patent No. 6,343,298, "Savchenko") references.  In an attempt to overcome these two prior art references, Mr. Kotab submitted an Amendment on or around August 8, 2002 in which independent claims 1 and 10 were amended.  On or around November 8, 2002, Examiner Singh issued a Final Office Action finally rejecting all of the

claims as being unpatentable over Hunt and Savchenko.  On or around January 8, 2003, Mr. Kotab filed a response arguing against the rejection.  On or around January 22, 2003, Examiner Singh issued an advisory action stating that the reply failed to place the application in condition for allowance.  On or around June 3, 2003, a Notice of Abandonment of the '586 Application was mailed.

61.     Both Hunt and Savchenko are material to the prosecution of the '945 Application. For example, Examiner Singh noted in the May 8, 2002 Office Action in the '586 Application that "Hunt discloses a means in which the user indicates the segment to be viewed next" and "Savchenko's method enables a user to switch from one continuous multimedia clip to another in response to user input in a seamless manner[.]"  ('586 Application, May 8, 2002 Office Action at 3-4.)  The issued claims of the '945 Application contain limitations that deal with the selection of a segment to play based on what is desired: "playing said expansion segment if said content expansion is desired and to a continuing segment and playing said continuing segment if said content expansion is not desired" (claims 1-14) and "playing said expansion segment if it is determined that said content is to be expanded . . . playing[or displaying] said continuing segment if it is determined that said content is not to be expanded" (claims 15 and 16). Therefore, Hunt and Savchenko (and the Office Actions and Amendments discussing them) are material to the prosecution of the '945 Application.

62.     The prosecution of the related parallel '586 Application overlapped in time with the prosecution of the '945 Application.  However, unlike the '586 Application, which was examined by Examiner Singh, the '945 Application was examined by a different examiner (Examiner Meky).

63.     The prosecuting attorneys did not disclose to Examiner Meky the Hunt and Savchenko references relied upon by Examiner Singh in the '586 Application or any of the Office Actions or Amendments from the prosecution files of the '586 Application.

64.     The prosecuting attorneys intentionally concealed the prior art references cited in the parallel '586 Application even though (as early as August 6, 2001) the prosecuting attorneys had previously filed many of the same papers across the three parallel applications (the '336, '681, and '586 Applications).  By intentionally concealing these references, the prosecuting attorneys' actions constitute inequitable conduct, which renders the claims of the '270 Patent unenforceable.  This, in turn, renders the '218 Patent unenforceable.

65.     The prosecuting attorneys intentionally concealed the Office Actions and Amendments from the prosecution files of the parallel '586 Application, which set forth the reasoning of another Examiner regarding the cited prior art references and the narrowing amendments and remarks of the prosecuting attorneys, even though as early as August 6, 2001 the prosecuting attorneys had previously filed many of the same papers across the three parallel applications (the '336, '681, and '586 Applications).  By intentionally concealing these materials, the prosecuting attorneys' actions constitute inequitable conduct, which renders the claims of the '270 Patent unenforceable.  This, in turn, renders the '218 Patent unenforceable.

66.     Additionally, the prosecuting attorneys intentionally concealed prior art references and Office Actions and Amendments from the prosecution files of the parallel '681 Application.  The specification of the '945 Application is substantially identical to the related parallel '681 Application, and the claims between the two applications are also substantially similar.  In fact, dependent claims 2-13 of the parallel '681 Application were essentially identical to the corresponding claims of the '336 and '945 Applications.

67.     On or around August 16, 2002, a third Examiner, Examiner Tran, rejected most of the claims of the '681 Application as anticipated by Abecassis (U.S. Patent No. 6,408,128, "Abecassis").  Without arguing against the rejection based upon Abecassis, Mr. Kotab filed a narrowing Amendment on or around November 25, 2002.  In response to the Amendment, Examiner Tran issued a Final Office Action (on or around February 12, 2002), in which he withdrew the rejections based on Abecassis but made new rejections based on Murase (U.S. Patent No. 6,366,732, "Murase").  In response to the Final Office Action, Mr. Zilka submitted a second Amendment further narrowing the claims of the '681 Application.  Abecassis and Murase were not submitted by Mr. Zilka in the first Amendment (mailed on or around February 19, 2003) in the '945 Application.  In fact, Abecassis and Murase were never submitted during the prosecution of the '945 Application.

68.     Both Abecassis and Murase are material to the prosecution of the '945 Application.  For example, Examiner Tran noted in the August 16, 2002 and February 12, 2003 Office Actions in the '681 Application that Abecassis and Murase disclose at least the following limitations:

> wherein each of said segments has a first terminus and a second terminus;
> wherein content in each of said segments has a temporal flow from said
> first terminus to said second terminus, and
> wherein at least one segment is associated with a plurality of links
> to a corresponding plurality of other of said segments
> playing said at least one segment of stored content with said
> temporal flow;

('681 Application, August 16, 2002 Office Action at 2-3; February 12 2003 Office Action at 2-3.)  These limitations are identical to issued claims 1-14 of the '945 Application.  Therefore, Abecassis and Murase (and the Office Actions and Amendments discussing them) are material to the prosecution of the '945 Application.

69.     The prosecution of the related parallel '681 Application substantially overlapped in time with the prosecution of the '945 Application.  However, the '945 Application (along with its parent '336 Application and its child '581 Application) was examined by a different examiner (Examiner Meky).

70.     The prosecuting attorneys did not disclose to Examiner Meky the Abecassis and Murase references relied upon by Examiner Tran in the '681 Application or any of the Office Actions or Amendments from the prosecution files of the '681 Application.

71.     Even though Abecassis and Murase were both relied on by Examiner Tran to reject all claims of the '681 Application before Mr. Zilka submitted the first Amendment (mailed on or around February 19, 2003) in the '945 Application, Mr. Zilka intentionally concealed these references, the Office Actions by Examiner Tran, and the prosecuting attorneys' November 25, 2002 narrowing Amendment, from Examiner Meky by not citing to these materials in their first Amendment of the '945 Application.

72.     The prosecuting attorneys intentionally concealed the prior art references cited in the parallel '681 Application even though (as early as August 6, 2001) the prosecuting attorneys had previously filed many of the same papers across the three parallel applications (the '336, '681, and '586 Applications).  By intentionally concealing these materials, the prosecuting attorneys' actions constitute inequitable conduct, which renders the claims of the '270 Patent unenforceable.  This, in turn, renders the '218 Patent unenforceable.

73.     The prosecuting attorneys intentionally concealed the Office Actions and Amendment from the prosecution files of the parallel '681 Application, which set forth the reasoning of another Examiner and the prosecuting attorneys' narrowing amendments and remarks regarding the cited prior art references, even though (as early as August 6, 2001) the

prosecuting attorneys had previously filed many of the same papers across the three parallel applications (the '336, '681, and '586 Applications).  By intentionally concealing these materials, the prosecuting attorneys' actions constitute inequitable conduct, which renders the claims of the '270 Patent unenforceable.  This, in turn, renders the '218 Patent unenforceable.

74.    As detailed above, the prosecuting attorneys were aware of and subject to the duty of candor and good faith under Title 37, CFR § 1.56, and their failure to disclose material prior art and the Office Actions and Amendments was done with an intent to deceive and constitutes inequitable conduct, which renders the claims of the '270 Patent unenforceable.  This, in turn, renders the '218 Patent unenforceable.

75.    The '218 Patent is unenforceable for at least a second reason:  the inequitable conduct committed during prosecution of Application No. 10/603,581 ("the '581 Application"). Shortly before the issuance of the '270 Patent, the Named Inventors, through the prosecuting attorneys, filed on June 24, 2003 a continuing application (the '581 Application), which ultimately issued as the '218 Patent.  The '581, '586 and '681 Applications have the same specification and similar claims.

76.    The prosecuting attorneys finally submitted the references cited in the '586 and '681 Applications during the prosecution of the '581 Application.  In addition, the prosecuting attorneys also submitted copies of the '586 Application and Application No. 10/360,271 ("the '271 Application"), which is a continuation of the '586 Application.

77.    However, the prosecuting attorneys failed to make a complete disclosure.  The prosecuting attorneys did not inform the Examiner that the '586 and '271 Applications were voluntarily abandoned.  Nor did they submit the application of the '681 Application (even

though they submitted the '980 Patent, which issued from the '681 Application) or any Office Actions or Amendments from the prosecution files of the '586, '271 or '681 Applications.

78.     The prosecuting attorneys were aware of the Office Actions and Amendments but intentionally concealed them from the Examiner.

79.     The Office Actions and Amendments are material to the prosecution of the '581 Application.  The Office Action and Amendments from the prosecution files of the '586, '271 and '681 Applications contain the Examiners' reasoning and the prosecuting attorneys' narrowing amendments and remarks regarding similar claims.  For example, the issued claims of the '581 Application contain the limitation of providing an expansion link/cue to an expansion segment (see '218 Patent, independent claims 1, 26, 44, 69 and 81) which is similar to the following limitations of the claims at issue in the '586, '271 and '681 Applications: "linking to an expansion segment" ('681 Application, claim 1), "code that expands the link to one or more segment" ('586 Application, claim 10) and "code that expands the link to one or more second segment" ('271 Application, claim 10).  Therefore, the Office Action and Amendments from the prosecution files of the '586, '271 and '681 Applications are material to prosecution of the '581 Application.

80.     The prosecuting attorneys intentionally concealed from the Examiner of the '581 Application (the continuing grandchild of the '336 Application) the Office Actions and Amendments from the prosecution files of the parallel '586, '271 and '681 Applications, which set forth the reasoning of other Examiners regarding the cited prior art references, even though (as early as August 6, 2001) the prosecuting attorneys had previously filed many of the same papers across the three parallel applications (the '336, '681, and '586 Applications).  By

intentionally concealing these materials, the prosecuting attorneys deprived Examiner Meky of the benefit of the analysis and reasoning of the other Examiners.

81.    The prosecuting attorneys were aware of and subject to the duty of candor and good faith under Title 37, CFR § 1.56, and their intentional concealment of the Office Actions from the prosecution files of the related applications was done with an intent to deceive and constitutes inequitable conduct, which renders the '218 Patent unenforceable.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Defendant-Counterclaimant Apple respectfully requests that this Court enter judgment in its favor and against Plaintiff-Counterdefendant MONKEYmedia and grant the following relief:

A.    A declaration that Apple does not infringe, whether directly or indirectly, literally or by the doctrine of equivalents, any valid and enforceable claim of the patents-in-suit;

B.    A declaration that the claims of the patents-in-suit are invalid and/or unenforceable;

C.    Dismissal of all of MONKEYmedia's claims against Apple in their entirety and with prejudice;

D.    A declaration that MONKEYmedia take nothing by way of its Complaint;

E.    An order awarding Apple its costs pursuant to 35 U.S.C. § 284 and/or Rule 54(d) of the Federal Rules of Civil Procedure;

F.    An order finding this an exceptional case under 35 U.S.C. § 285, and awarding Apple its costs and fees in this action, including attorney's fees, and prejudgment interest thereon; and

G.    An order awarding Apple such further relief as the Court may deem appropriate under the circumstances.

## XII.   JURY TRIAL DEMAND

Apple hereby demands a trial by jury on all issues triable by a jury as of right in this action.

Date:  August 25, 2010            Respectfully submitted,

/s/ *Vincent J. Belusko*
Vincent J. Belusko *(admitted Pro Hac Vice)*
Bita Rahebi *(admitted Pro Hac Vice)*
Alex S. Yap *(admitted Pro Hac Vice)*
**MORRISON & FOERSTER** LLP
555 West Fifth Street
Los Angeles, California 90013-1024
Telephone: (213) 892-5200
Facsimile:  (213) 892-5454


Alan D. Albright (State Bar No. 00973650)
Brian C. Nash (State Bar No. 24051103)
**BRACEWELL & GIULIANI LLP**
111 Congress Avenue, Suite 2300
Austin, Texas 78701
Telephone: (512) 472-7800
Facsimile:  (512) 472-9123


Attorneys for Defendant
APPLE INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing was served upon

all counsel of record via the Court's ECF and pdf e-mail on this the 25th day of August, 2010.


Steven D. Smit                                        *COUNSEL FOR PLAINTIFF,·*
Matthew C. Powers                                     *MONKEYMEDIA, INC.*
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress, Avenue, Suite 2200
Austin, Texas 78701
SSmit@gdhm.com
mpowers@gdhm.com


                                        /s/ *Alan D. Albright*
                                        Alan D. Albright